UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| DESIDERIO DISLA ESTEVEZ      a/k/a "Nelson Orellana" | : | No. 13-020 |

**M E M O R A N D U M**

**GENE E.K. PRATTER, J.**                                                                                    **MARCH 26, 2014**

**Introduction**

The grand jury charged Desiderio Disla-Estevez with two counts of distribution of heroin and one count of possession of 100 grams or more of heroin with intent to distribute. Mr. Disla-Estevez proceeded to trial and the jury found him guilty of the one count of possession of 100 grams or more of heroin with intent to distribute. He was acquitted on the other two charges.

According to evidence presented during the trial, the heroin at issue was seized from 624 Brill Street in Philadelphia in the course of a search by Philadelphia police officers on September 28, 2012. Specifically, the heroin was found in a hidden compartment under the floor in a bedroom closet. While searching the premises, officers[1] found a receipt for furniture purchased by one "Nelson Orellana." During questioning through the translating auspices of Spanish-speaking Officer C (who so testified at trial), Mr. Disla-Estevez identified himself as "Nelson Louis Orellana" in response to questioning by a senior officer in English. The Government argued at trial that the evidence was sufficient to demonstrate the necessary possessory link

---

[1] The names of the officers have, by agreement, been treated as confidential and subject to a seal order. Consequently, the Court will use only initials to distinguish among them.

between Mr. Disla-Estevez and the heroin.

Approximately two months after the trial concluded, the Government disclosed that in 2005 Officer C had been found guilty of conduct unbecoming a police officer by a police board of inquiry arising out of the Officer's having caused court attendance time records to be falsified in his favor in 2002. Post-trial disclosure[2] of this information has prompted the defense motion, and amended motion, for a new trial premised upon the argument that the aforementioned information about Officer C falls within the reach of Brady v. Maryland, 373 U.S. 83 (1963), and, as evidence that impeaches a Government witness, its non-disclosure violated Mr. Disla-Estevez's due process rights.

Counsel presented oral argument on the motion and the Court invited and reviewed initial and supplemental briefing on the factual and legal issues. For the reasons explained below, the motion for new trial is denied.

**Discussion**

Under Brady, the Government must produce all exculpatory material within its possession, including material that could be used to impeach Government witnesses. Here, the Government takes no issue with Brady's general significance or holding. Indeed, the Government concedes that if the federal prosecutor had had this "mildly helpful" or "barely helpful" information about Officer C before trial, he "would have turned it over" to the defense. Hrg. 11/26/13 N.T. 21-22. However, the Government argues that the information about Officer

---

[2] There is no allegation or intimation that the information had been deliberately or willfully withheld or that there was any element of bad faith by or on behalf of the Government relating to the production timing. All parties agree that the non-disclosure before trial was inadvertent. The parties also agree that the absence of willfulness and bad faith does not end of inquiry or insulate the Government from this motion.

C was not material to Mr. Disla-Estevez, and, hence, would not trigger Brady consequences. Specifically, the Government relies upon United States v. Walker, 657 F. 3d 160 (3d Cir. 2011), in which our Court of Appeals explained that "not… *every* unexplored avenue of impeachment is *ipso facto* material." Walker, 657 F. 3d at 188 (emphasis in original). In fact, "[o]nly those new avenues of impeachment that sufficiently undermine confidence in the verdict" can result in a meritorious Brady argument. Id. Stated differently, the application of Brady depends upon whether the information in question "may make the difference between conviction and acquittal." United States v. Perdomo, 929 F. 2d 967, 972 (3d Cir. 1991) (quoted in Walker, 657 F. 3d at 188).

The Court concludes, after review of the trial record and the post-trial representations of counsel, that here the undisclosed impeachment material does not undermine the confidence in the guilty verdict. Its pre-trial disclosure would not have led reasonably to or down a path for undercutting the Government's evidence against Mr. Disla-Estevez on the charge on which he was convicted. The jury reviewed the following evidence aside from Officer C's testimony:

On September 28, 2012 Philadelphia police officers observed Mr. Disla-Estevez open the door to 624 Brill Street and take money from a man who had approached the property. The visitor entered briefly and left the house after about 5 minutes. Though the police tried to follow this man, he evaded them after tossing two bags of heroin from his car. The police then returned to the Brill Street residence with a search warrant. They found Mr. Disla-Estevez alone in the house. They found 118 grams of heroin, several unused baggies, a coffee grinder marred by heroin residue and a digital scale. Elsewhere in the house they found the aforementioned furniture receipt. The foregoing was explained to the jury by Officers M and W at trial, the

3

officers who had made the pre-search observations and then conducted the search.  It was those officers who requested that a Spanish-speaking officer come to the house.  N.T. 6/25/13 at 129, 159.

As mentioned above, Officer C., a Spanish-speaking officer, was dispatched to the residence to assist with the interview of Mr. Disla-Estevez, who only spoke Spanish.  Sergeant Friel inquired of the Defendant what his name was, Officer C translated the question and Defendant replied that he was "Nelson Alamo Orellana."  As Officer C handled the translating inquiries, Sergeant Friel wrote that name down on the report.  Tr. N.T. 6/25/13 at 228-229; Ex. G-29.  The defense also used the report and offered it into evidence as Ex. D-4.  Tr. 6/25/16 N.T. at 231.  Another witness, federal DEA Special Agent Thompson testified that he had seen a Pennsylvania driver's license with Defendant's photograph and the name "Nelson Orellana" in a Government data base.  Tr. N.T. 6/25/13 at 21.  There was no defense challenge at trial to Defendant's use of the name Nelson Orellana.

As explained by Government's counsel, Officer C was not part of counsel's original trial plan.  When the decision was made about two weeks before trial to include Officer C as a trial witness in order to explain to the jury how the translation came to be, counsel put in the customary request to the Philadelphia Police Department for any personal information about Officer C.  The first response to counsel's inquiry was received from the Philadelphia Police Department on the day that Officer C had testified in this trial, but was so vague as to prompt no action other than to ask the Philadelphia authorities to search for possibly more information.  The fuller response did not come for a few weeks, by which time the trial was over.  The actual information about Officer C was that the Philadelphia Police Internal Affairs authorities had

4

determined that Officer C had arranged for another officer to "clock" him in for being in court when he was running late. Officer C admitted the conduct before internal affairs authorities and his record reflects these six incidents of records falsification.

Defendant Disla-Estevez contends that it was his theory for trial that the Philadelphia police framed him for the crimes charged and that the impeachment material from 11 years earlier would have fit into this theory by allowing defense counsel to expose Officer C as untruthful. Thus, according to the defense, this would have then arguably supported the suggestion that Officer C was also untruthful about the name he heard the Defendant give in response to the question posed by Sergeant Friel during the on-site background interview. The Government counters that the leaps demanded in order to make the necessary inferences to support Defendant's argument are too long and problematic to warrant a new trial.

The insufficiencies of Defendant's argument stem from the facts that Officer C was neither the lone witness regarding the Defendant's linkage to the name Nelson Orellana nor was he exercising (nor did he have any opportunity to exercise) any discretion with respect to the interview circumstances at the Brill Street premises. The translating tasks did not involve translating the name itself. Moreover, federal Agent Thompson had determined that Mr. Disla-Estevez had previously used the name Nelson Orellana with a Pennsylvania driver's license on which Defendant's picture appeared. "Nelson Orellana" was the name Defendant gave in response to the translated question and it was the name Sergeant Friel wrote down on the biographical information sheet.

Given Officer C's minor role in these facts, the defense notion that impeaching Officer C would have added in some material way to the theory that the Philadelphia police framed Mr.

5

Disla-Estevez is simply too attenuated, and not "reasonably probable," to trigger Brady. See Walker, 657 F. 3d at 186. As the Government logically explains, to conclude that Officer C lied about the name he heard Defendant give in order to help frame Mr. Disla-Estevez would also require finding the officers participating in the search and interview were co-conspirators in the frame scenario *and* that federal DEA Agent Thompson also was lying about the driver's license and was part of a conspiracy primarily orchestrated by the city's police. None of these latter logical necessities have any connection to Officer C's errors eleven years ago. None of them have any independent credence. Accordingly, the Court cannot conclude that the undisclosed information creates a reasonable probability of a different outcome at Mr. Disla-Estevez's trial.

**Conclusion**

For the foregoing reasons, the motion for new trial is denied.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge